for.  The Legislature has declared no such thing, but the very contrary.  A court of last resort may disregard legislation, or even legislate, but only because there is no superior authority to reverse its action.  This court is not in that position.  It is for it to follow the statutes, and leave it to the highest court to dispense with their operation, if that course is to be pursued.  We can declare no "sound public policy" as against a statute, and substitute it for the statute.  Public policy must be looked for in our statutes in so far as they have spoken, not outside of them.  And I venture to say there is no public policy for the shielding of railroad companies from the payment of statute penalties which they persistently incur year after year, but the contrary.  For street railroad companies to continuously refuse for many years—for ten years—to give the transfers over their connecting lines required by statute is a condition of things "in the modern life of great cities" which public policy requires should be visited with all the prescribed penalties, instead of being shielded from them by the courts against the expressed will of the Legislature.  A right of action for a penalty having accrued, and the action having begun, the beginning of a subsequent action for a subsequent penalty cannot be a waiver of the prior penalty and action, and be pleaded in bar of such action, as is the case before us.  To so hold is to give the offender practical immunity; for the bringing of a new action for each successive offense would only condone all of the former offenses, and furnish a plea in bar to all prior actions therefor, and no judgment would ever be reached for a penalty; and by successive new actions being thus made worse than useless, farcical, in fact, the offender may go on offending with impunity until some action—the last one brought —reaches judgment; and when such judgment is reached, only one penalty out of the many incurred meanwhile may then be sued for, and all the others being "previous" to the bringing of this new action, are condoned.  I cannot believe that our highest court meant to decide such a thing, and we should all wait until it shall "state its intention in so many words," as it says of the Legislature in the Griffin Case.  The Legislature followed a line of decisions of the Court of Appeals, cited in the Griffin Case, in using the phrase "every refusal" in the railroad law.  It is now told that its language is not plain enough.  I hope I may say with the highest respect for all concerned that I do not see how the Legislature can make its meaning plainer without passing a bill of remonstrance that it means just what it says.

---

(121 App. Div. 899, 900)

### HARKOW v. NEW YORK CITY RY. CO. (five cases).

(Supreme Court, Appellate Division, Second Department.  July 23, 1907.)

Appeal from Municipal Court, Borough of Brooklyn, Second District.

Five actions by Joseph H. Harkow against the New York City Railway Company.  From a judgment for defendant in each, plaintiff appeals.  Affirmed.

'Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

PER CURIAM. Judgment of the Municipal Court affirmed, with costs. See decision in Harkow v. New York City Railway Company (decided herewith) 105 N. Y. Supp. 689.

---

(121 App. Div. 285)

### BALLEISEN et al. v. SCHIFF.

(Supreme Court, Appellate Division, Second Department. July 23, 1907.)

1. ELECTION OF REMEDIES—INCONSISTENCY OF ALTERNATIVE REMEDIES.

An action at law for damages for the breach of a contract and an action in equity for specific performance are both based on the contract and the promisor's default, and are not inconsistent remedies.

2. SPECIFIC PERFORMANCE — HEARING — DISMISSAL — JURISDICTION — COUNTERCLAIM.

Where, in an action for specific performance of an executory contract to buy land, the defendant set up a counterclaim, alleging that the plaintiff was in default, and asked for a return of his deposit and for damages, the plaintiff, by withdrawing his demand for specific performance, did not oust the court of jurisdiction to try the issue raised by the defendant's counterclaim.

3. SAME—WAIVER OF DEFAULT.

The plaintiff, by withdrawing his demand for specific performance, did not waive defendant's default, which was the basis of his right to recover.

4. JUDGMENT—NATURE AND ESSENTIALS—EVIDENCE TO SUPPORT JUDGMENT.

In an action for specific performance, where, after defendant had filed a counterclaim, plaintiff withdrew his demand for relief, it was error for the court to render judgment on the counterclaim without hearing any proof to support it.

Appeal from Special Term, Kings County.

Action by Wolf Balleisen and others against Moses Schiff. From a judgment for defendant, plaintiffs appeal. Reversed, and new trial granted.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Jacob W. Kahn, for appellants.
Herman S. Bachrach, for respondent.

MILLER, J. The plaintiff, as vendor, brought this action to compel specific performance of an executory contract of purchase and sale of real property, alleging a breach on the part of the defendant. The defendant set up a counterclaim, alleging that the plaintiff was in default, and asking for a return of his deposit and for damages. On the trial the plaintiff, having previously sold the property, withdrew his demand for specific performance, and the court, without taking any proof on the question of which party was first in default, gave the defendant judgment for the amount of his deposit, on the theory that the commencement of the suit for specific performance was a recognition of the existence of the contract, and that the sale